FIRSTSOUTH FEDERAL SAVINGS AND LOAN
ASSOCIATION *v.* INDIANDALE MANOR COMPANY
and KING'S COURT ASSOCIATES

CA 82-350 648 S.W.2d 840

Court of Appeals of Arkansas
Opinion delivered April 13, 1983

*Coleman, Gantt, Ramsey & Cox,* by: *E. Harley Cox, Jr.,* for appellant.

*House, Holmes & Jewell, P.A.,* by: *Darrell D. Dover,* for appellee, Indiandale Manor Company.

*Wright, Lindsey & Jennings,* for appellee, King's Court Associates.

GEORGE K. CRACRAFT, Judge. FirstSouth Federal Savings and Loan Association appeals from a decree which finds that Indiandale Manor Company and King's Court Associates were not in default on a note and mortgage executed in favor of FirstSouth and which dismisses a complaint in foreclosure brought by it. It contends that the trial court erred in its finding that the lien documents did not authorize an acceleration of the debt in the event of a sale of the mortgaged property by Indiandale. We do not agree.

During 1973 FirstSouth entered into an agreement with Indiandale Manor Company for a loan of $1,800,000 for the construction of an apartment complex. On May 15, 1973 Indiandale executed its promissory note in that amount and executed a mortgage on the property to secure payment. All of the money was not disbursed on that date. It was disbursed in accordance with the supplemental loan agreement entered into on that same date which, among other things, specified the times and amounts of disbursements and the dates on which the 8.5% interest would begin to run on each disbursement. Both the note and the mortgage specified that if default be made in the provisions of the note, mortgage or supplemental loan agreement, the lender could accelerate the whole debt.

On December 31, 1981 Indiandale conveyed the mortgaged property to King's Court Associates. FirstSouth brought this action to foreclose the mortgage asserting that the sale to King's Court was in violation of a covenant of the mortgage not to transfer its rights and obligations and that upon breach of that covenant it had the right to accelerate the debt. It was stipulated that at that time there had been no default on the payments on the notes or other covenants of the documents which would warrant acceleration of the debt. The appellee admitted the execution of the three documents and the transfer of the property but denied that it was otherwise in default. It further denied that it was bound by any acceleration agreement "on sale" or transfer of the property and that the complaint therefore failed to state a cause of action. Neither the note nor mortgage contained any "due on sale" provisions for acceleration.

The mortgage did incorporate the loan agreement by reference and appellant contends that the covenant on which it relies was contained in paragraph thirteen of the loan agreement which is as follows:

13. *Succession of Commitment Under this Agreement.*

This agreement shall extend to and be binding upon the successors and assigns of the parties hereto, provided, that the Borrower shall not assign or transfer its rights or obligations hereunder without the prior written consent of the Lender and it is agreed that the Lender shall and may exercise all powers and authority granted to it under this agreement without any liability on its part.

The chancellor ruled that the above provision had only to do with the bank's obligation committing it to make advances under the loan agreement and only restricted the right of the borrower to transfer his interest in that loan agreement to a third party without the written consent of the lender. He ruled that it had no effect upon the note or mortgage *after the construction had been completed* and the loan proceeds finally disbursed. We agree.

The appellee concedes that a provision in a mortgage executed to a federal savings and loan association providing for acceleration of the debt upon sale of the property by the borrower is a valid one. We agree that even though our court held in *Tucker* v. *Pulaski Federal Savings & Loan Assoc.,* 252 Ark. 849, 481 S.W.2d 725 (1972), that such a clause could not be enforced where there were no legitimate grounds for refusal to accept a particular transferee, the Supreme Court of the United States in *Fidelity Federal Savings & Loan Assoc.* v. *De La Cuesta,* ___ U.S. ___, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982), held that the Federal Home Loan Bank Board's regulations preempted state law in this area and that under existing regulations federal savings and loan associations were authorized to enforce such clauses without a showing of impairment of security. This preemption has been recognized by the Arkansas Supreme Court. *Independence Fed'l S. & L. Ass'n* v. *Davis,* 278 Ark. 387, 646 S.W.2d

336 (1983). They contend, however, that the trial court was correct in holding that there was no such clause in effect at the time acceleration was declared.

It is well settled that if two or more writings are executed at the same time between the same parties concerning the same subject matter they may be construed together, especially where they incorporate each other by reference. However, when these three documents are read together the provisions of paragraph thirteen of the loan agreement do not constitute a covenant not to transfer an interest after the period of construction has been completed. It is clear that, while the mortgage and note established the rights and obligations of the parties with regard to the repayment of the loan, the subject of the loan agreement was the commitment of FirstSouth to lend the funds and the rights and obligations of the parties with respect to those funds *while construction was in progress.* It prevented the borrower from assigning his interest in the loan proceeds to anyone unacceptable to the lender. This becomes clear from an examination of the subject matter of the loan agreement itself. It recites that the borrower is the owner of the real estate and intends to build apartment buildings and other related facilities on it in accordance with agreed plans and specifications. The lender agrees to lend the funds necessary to complete the construction of the planned improvements and the loan agreement recites it was intended to supplement the note and mortgage and was not in lieu of it.

The operative provisions of the loan agreement deal with:

1. Advances of funds during construction (para. 2),

2. presentation of substantiating documents for advances during construction (para. 3),

3. computation of interest from the time of disbursement during construction (para. 4),

4. the right of the Lender to cease disbursement during construction for default of Indiandale Manor (para. 5),

5. the obligation of Indiandale Manor to complete the apartments by a certain date (para. 6),

6. characterization of all improvements during construction as realty (para. 7),

7. appointment of FirstSouth as an agent to make disbursements and continue construction (para. 8),

8. the effect of delay in construction work (para. 9),

9. the requirement of subcontractors to provide lien notices to FirstSouth during construction (para. 10),

10. the right of FirstSouth to inspect during construction (para. 11),

11. maintenance of insurance during the progress of the work (para. 12), and

12. inadvertent imposition of usury (para. 14),

14. and the furnishing of an appraisal on completion of the work (para. 16).

Paragraph 17 of the loan agreement is particularly supportive of the chancellor's conclusion that the agreement was intended to control appellee's actions during the period of construction and not after completion. Indiandale was a partnership composed of eight partners all of whom were obligated on the three instruments. Each was personally liable on the note when executed. Paragraph 17 provided that *after completion of the construction* of the apartment complex as contemplated by the plans and specifications the lender would look solely to the property for satisfaction of the debt and seek no personal or deficiency judgment against any partner. It strictly limited the partners' personal liability to the period of construction. Except for language dealing with the limitation of interest to the maximum allowed by law and the limitation of liability on the loan to the project itself, there are *no* provisions which have meaning after construction is complete. We do not find the wording of the

loan agreement to be ambiguous in any respect. We agree with the chancellor that a reading of it can only lead to the conclusion that it was concerned with the process of advancement of loans as construction progressed and with guarantees that the construction would be completed. In other words it deals only with the period between the time of the agreement to make the loan and the completion of the structure, and once the structure was complete and all funds disbursed the loan agreement ceased to have any application to the note and mortgage. It is clear that if during the period of construction and advancement any convenant in that loan agreement had been violated the lender would have had the right to accelerate the note. But after the final payment and the obligations under the loan agreement had been fully discharged the rights of these parties were governed by the note and mortgage itself. We conclude that the chancellor correctly determined that paragraph 13 of their loan agreement applied only to the transfer of the lender's interest during the construction period and that there was no "on-sale" agreement in effect between the parties at the time the suit was filed.

As it was stipulated that the appellees were not otherwise in default the chancellor correctly dismissed this action.

We affirm.